1  DAN MARMALEFSKY (BAR NO. 95477)
   DMarmalefsky@mofo.com
2  PURVI G. PATEL (BAR NO. 270702)
   PPatel@mofo.com
3  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard, Suite 6000
4  Los Angeles, California 90017-3543
   Telephone:    213.892.5200
5  Facsimile:    213.892.5454

6  Attorneys for Defendant
   MONSTER BEVERAGE CORPORATION
7
   (*Additional counsel listed on next page*)
8

9

10

11                   UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                      OAKLAND DIVISION

14

15  PEOPLE OF THE STATE OF CALIFORNIA          Case No.      CV13-2500-PJH
    ex rel. DENNIS HERRERA, SAN FRANCISCO
16  CITY ATTORNEY,                             **NOTICE OF MOTION AND
                                               MOTION; MEMORANDUM OF
17              Plaintiff,                      POINTS AND AUTHORITIES IN
                                               SUPPORT OF DEFENDANT
18       v.                                     MONSTER BEVERAGE
                                               CORPORATION'S MOTION TO
19  MONSTER BEVERAGE CORPORATION,              DISMISS, STAY, OR TRANSFER
                                               ACTION**
20              Defendant.
                                               Hearing Date:  September 18, 2013
21                                             Hearing Time: 9:00 a.m.
                                               Judge: Hon. Phyllis J. Hamilton
22                                             Place: Courtroom 3

23

24

25

26

27

28

1  JAMES J. BROSNAHAN (BAR NO. 34555)
   JBrosnahan@mofo.com
2  WILLIAM L. STERN (BAR NO. 96105)
   WStern@mofo.com
3  CLAUDIA M. VETESI (BAR NO. 233485)
   CVetesi@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone: 415.268.7000
6  Facsimile:  415.268.7522

7  MIRIAM J. GUGGENHEIM
   (D.C. BAR NO. 459735)
8  (admitted *pro hac vice*)
   mguggenheim@cov.com
9  COVINGTON & BURLING LLP
   1201 Pennsylvania Avenue, NW
10 Washington, DC 20004
   Telephone: 202.662.6000
11 Facsimile:  202.662.6291

12 Attorneys for Defendant
   MONSTER BEVERAGE CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

NOTICE OF MOTION AND MOTION ....................................................................................v

STATEMENT OF THE ISSUES TO BE DECIDED...................................................................vi

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...............................................1

II.   FACTUAL BACKGROUND ...................................................................................1

      A.    Plaintiff's Investigation into Monster Energy® Drinks. .........................1

      B.    The Two Complaints Compared. ..........................................................2

            1.    *Monster v. Herrera* Was the First-Filed Case. ...........................2

            2.    Plaintiff Filed *Herrera v. Monster* in California State Court....................3

            3.    Similarities Between the Two Complaints....................................3

      C.    FDA's Investigation into the Safety of Energy Drinks. ........................4

III.  ARGUMENT .......................................................................................................5

      A.    The Court Should Dismiss or Stay this Case Under the First-to-File
            Rule. .....................................................................................................5

            1.    This Case Satisfies the Requirements of the First-to-File
                  Rule. .............................................................................................6

            2.    None of the Exceptions to the First-to-File Rule Apply. ...........7

            3.    If the Court Does Not Dismiss this Action, It Should Stay
                  The Case Pending Resolution of *Monster v. Herrera*..............8

      B.    If the Court is Not Inclined to Dismiss or Stay this Case, the Case
            Should Be Transferred to the Central District of California. ...............10

            1.    The First-To-File Rule Supports Transfer to the Central
                  District of California. ................................................................10

            2.    Transfer to the Central District of California Is Proper
                  Under Section 1404(a) to Promote Judicial Economy............10

            3.    The Remaining Section 1404(a) Factors Also Favor
                  Transfer to the Central District of California............................11

IV.   CONCLUSION...................................................................................................13

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*A.J. Indus., Inc. v. U.S. District Court,*
5
    503 F.2d 384 (9th Cir. 1974)...........................................................................................11

6

*Alibaba.com, Inc. v. Litecubes, Inc.,*
    No. C03–5574 MHP,
7
    2004 U.S. Dist. LEXIS 3492 (N.D. Cal. Mar. 8, 2004)...........................................7

8

*Alioto v. Hoiles,*
    No. C 04–1395 PJH,
9
    2004 U.S. Dist. LEXIS 21398 (N.D. Cal. Oct. 12, 2004)..........................................6

10

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
11
    946 F.2d 622 (9th Cir. 1991).................................................................................5, 6, 7

12

*Billing v. CSA-Credit Solutions of Am., Inc.,*
    No. 10-cv-0108 BEN (NLS),
13
    2010 U.S. Dist. LEXIS 63314 (S.D. Cal. June 21, 2010)...................................12, 13

14

*Church of Scientology of Cal. v. U.S. Dep't of the Army,*
15
    611 F.2d 738 (9th Cir. 1979)...........................................................................................5

16

*CMAX, Inc. v. Hall,*
    300 F.2d 265 (9th Cir. 1962)...........................................................................................9

17

*Cont'l Grain Co. v. The Barge FBL—585,*
18
    364 U.S. 19 (1960)...........................................................................................................11

19

*Curtis v. DiMaio,*
20
    46 F. Supp. 2d 206 (E.D.N.Y. 1999)...............................................................................5

21

*Elecs. For Imaging, Inc. v. Tesseron, Ltd.,*
    No. C 07-05534 CRB,
22
    2008 U.S. Dist. LEXIS 10844 (N.D. Cal. Jan. 29, 2008) .........................................11

23

*Gate Guard Servs. L.P. v. Solis,*
    No. V-10-91,
24
    2011 U.S. Dist. LEXIS 75508 (S.D. Tex. July 12, 2011)................................6, 7, 8

25

*Gen-Probe, Inc. v. Amoco Corp.,*
26
    926 F. Supp. 948 (S.D. Cal. 1996)..................................................................................9

27

*Howard v. Klynveld Peat Marwick Goerdeler,*
    977 F. Supp. 654 (S.D.N.Y. 1997).................................................................................5

28

ii

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  Nos. C 10-3517 SI, 10-3619 SI,
  2011 U.S. Dist. LEXIS 53064 (N.D. Cal. Apr. 13, 2011) ....................................................... 5

*Inherent.com v. Martindale-Hubbell*,
  420 F. Supp. 2d 1093 (N.D. Cal. 2006) ................................................................................. 5

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
  544 F. Supp. 2d 949 (N.D. Cal. 2008) ................................................................................. 6

*L. Cohen Grp. v. Herman Miller, Inc.*,
  No. C 05-4476 SI,
  2006 U.S. Dist. LEXIS 2301 (N.D. Cal. Jan. 19, 2006) ....................................................... 6

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .............................................................................................................. 9

*M.D. Beauty, Inc. v. Gross*,
  No. C03-3082 SBA,
  2003 U.S. Dist. LEXIS 27257 (N.D. Cal. Oct. 27, 2003) ..................................................... 8

*Nat'l Union Fire Ins. Co. v. Payless Shoesource, Inc.*,
  No. C-11-1892 EMC,
  2012 U.S. Dist. LEXIS 112346 (N.D. Cal. Aug. 9, 2012) ..................................................... 6

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982) ................................................................................................... 5

*Papaleo v. Cingular Wireless Corp.*,
  No. C-07-1234-MMC,
  2007 U.S. Dist. LEXIS 34448 (N.D. Cal. Apr. 26, 2007) ................................................... 12

*Sherwin-Williams Co. v. Holmes Cnty.*,
  343 F.3d 383 (5th Cir. 2003) ................................................................................................ 7

*St. Helena Wine Co. v Allied Mgmt.*,
  No. C98-1683 MJJ,
  1998 U.S. Dist. LEXIS 12558 (N.D. Cal. Aug. 10, 1998) ................................................... 10

*Tesoro Corp v. Chartis Specialty Ins. Co.*,
  No. C 11-5718 PJH,
  2012 U.S. Dist. LEXIS 28078 (N.D. Cal. Mar. 2, 2012) ....................................................... 8

*Ward v. Follett Corp.*,
  158 F.R.D. 645 (N.D. Cal. 1994) ........................................................................................... 7

*Young v. Kelly*,
  Nos. 88-CV-0511E(M), 88-CV-0769E(M),
  1993 U.S. Dist. LEXIS 13816 (W.D.N.Y. Sept. 30, 1993) ................................................... 5

STATUTES

28 U.S.C.
    § 1404(a) ...................................................................................................... 1, 10, 11

Cal. Bus. & Prof. Code
    § 17200 *et seq.* ..................................................................................................... 3

RULES

Fed. R. Civ. P.
    Rule 42 ...................................................................................................................... 10

N.D. Cal. Civ. L.R.
    Rule 3-2(h) .......................................................................................................... 1, 10

# NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 18, 2013, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, CA 94612, before the Honorable Phyllis J. Hamilton, Defendant Monster Beverage Corporation will, and hereby does move to dismiss this action or, in the alternative, to stay this action, on the grounds of comity and pending resolution of the first-filed action entitled *Monster Beverage Corporation, et al. v. Dennis Herrera*, Case No. 5:13-cv-00786 VAP-OPx (C.D. Cal. Apr. 29, 2013).  If the Court is not inclined to dismiss or stay this action, Defendant moves for an order transferring this case to the Central District of California pursuant to the first-to-file rule, 28 U.S.C. § 1404(a), and Civil L.R. 3-2(h).

This motion is based on this Notice of Motion and Motion and the accompanying Memorandum of Points and Authorities, the declaration of Claudia M. Vetesi, the declaration of Thomas J. Kelly, Defendant's Request for Judicial Notice in Support of Motion to Dismiss, Stay, or Transfer, filed simultaneously with this motion, and on such other written and oral argument as may be presented to the Court.

Dated:  July 3, 2013                                     MORRISON & FOERSTER LLP

By:   /s/ Dan Marmalefsky
DAN MARMALEFSKY

Attorneys for Defendant
MONSTER BEVERAGE CORPORATION

1

**STATEMENT OF THE ISSUES TO BE DECIDED**

2

This motion raises the following issues:

3

4

     1.     **First-to-File Rule.**  Should the Court dismiss this action under the first-to-file

5

rule where the first-filed action, *Monster Beverage Corporation, et al. v. Dennis Herrera*, Case

6

No. 5:13-cv-00786-VAP-OPx (C.D. Cal. Apr. 29, 2013), involves the same facts and legal

7

issues as Plaintiff's Complaint?  In the alternative, should the Court stay this duplicative action

8

pending resolution of the first-filed action?

9

     2.     **Transfer.**  If the Court is not inclined to dismiss or stay this action, should the

10

Court transfer this case to the Central District of California where the first-filed action, *Monster*

11

*Beverage Corporation, et al. v. Dennis Herrera*, is pending and venue is proper?

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Monster Energy® drinks have less than half the caffeine per ounce than the leading brands of coffeehouse-brewed coffee such as Starbucks.  Nevertheless, Plaintiff has decided—with little regard for science or fact—that Monster's drinks are unhealthful.  Indeed, after the Food and Drug Administration ("FDA") announced its investigation into the safety of energy drinks, and after publicly lauding FDA for doing so, Mr. Herrera insisted that Monster reformulate its drinks and change its labeling and marketing practices more to his liking.  Monster sued in the Central District of California, seeking declaratory judgment and an injunction against Mr. Herrera's unlawful demands.[1]  Unwilling to defend himself there, Plaintiff filed this redundant action.

The Court should dismiss, stay, or transfer this case.

First, this action should be dismissed or stayed under the first-to-file rule.  Plaintiff's action and Monster's first-filed suit are opposite sides of the same coin.  The two cases involve the same facts, parties, and fundamental legal issue:  whether Monster's energy drinks contain unsafe levels of caffeine under FDA's regulations.  The Court should dismiss Plaintiff's duplicative action, or stay his case pending resolution of the first-filed action.

Second, if the Court is not inclined to dismiss or stay this case, it should transfer the proceedings to the Central District of California.  Transfer is supported not only by the first-to-file rule, but is also proper under 28 U.S.C. § 1404(a) and Civil L.R. 3-2(h).

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Investigation into Monster Energy® Drinks.

On October 31, 2012, Mr. Herrera commenced his investigation into Monster Energy® drinks, sending his demand letter to the New York Times the same day he sent it to Monster.  (RJN, Ex. 1 at ¶¶ 44-45.)  Monster responded by letter on December 20, 2012, systematically

---

[1] The *Monster* Complaint (with exhibits) is attached as Exhibit 1 to the accompanying Request for Judicial Notice in Support of Defendant's Motion to Dismiss, Stay, or Transfer Action ("RJN").  That action is assigned to Judge Virginia A. Phillips, where it has been related to an earlier filed class action.  *See Fisher, et al. v. Monster Beverage Corporation, et al.*, No. 5:12-cv-02188-VAP-OPx (C.D. Cal. Dec. 12, 2012); *Monster Beverage Corporation, et al. v. Dennis Herrera*, No. 5:13-cv-00786 VAP-OPx (C.D. Cal. Apr. 29, 2013).

1   debunking Mr. Herrera's irresponsible charges with reams of scientific studies supporting the

2   safety of its energy drinks.  (RJN, Ex. 1 at ¶ 47.)  On March 19, 2013, Mr. Herrera wrote to FDA

3   urging that agency to take action.  (*Id.* at ¶ 48.)

4        Despite implicitly acknowledging FDA's jurisdiction, Mr. Herrera wrote Monster ten days

5   later, on March 29, 2013, asserting that Monster Energy® drinks are not generally recognized as

6   safe ("GRAS") under FDA regulations, and "demand[ing] that Monster take immediate steps to

7   reformulate its products to safe caffeine levels, provide adequate warning labels, and cease

8   promoting over-consumption."  (*Id.* at ¶ 49.)  He invited Monster to discuss those demands with

9   him.

10       Meanwhile, on April 19, 2013, FDA responded to Plaintiff's March 19 letter, informing

11  him that the agency had, in fact, decided to investigate the safety of caffeine in energy drinks.[2]

12  Nevertheless, Plaintiff remained committed to his own investigation.

13       In response to Plaintiff's March 29 letter, Monster called to schedule a meeting to discuss

14  Mr. Herrera's demands and proposed dates that were convenient for Monster's FDA counsel to

15  travel from Washington, DC to San Francisco.  Plaintiff hesitated, but agreed to meet on May 2,

16  2013.  However, on April 24, 2013, just one week before the scheduled meeting, Mr. Herrera sent

17  Monster a "take-it-or-leave-it" letter outlining the injunction he was demanding.[3]  (RJN, Ex. 3.)

18  After receiving this letter, Monster decided to file suit to protect itself from Mr. Herrera's

19  unlawful demands.  Still, Monster remained willing to negotiate and offered to attend the May 2

20  meeting.  Mr. Herrera unilaterally cancelled that meeting on April 30, 2013.  (RJN, Ex. 4.)

21       **B.      The Two Complaints Compared.**

22            **1.      *Monster v. Herrera* Was the First-Filed Case.**

23       Monster filed suit against Mr. Herrera on April 29, 2013, in the Central District of

24  California, where it does business.  *Monster Beverage Corporation, et al. v. Dennis Herrera*,

25  _____

26  [2] *See* Notice of Removal, Dkt. No. 1, Ex. F.

27  [3] Monster refrained from attaching Plaintiff's "take-it-or-leave-it" letter to its own Complaint—
    out of respect for Mr. Herrera's request that the letter be afforded confidential treatment.  Mr.
    Herrera, though, posted the letter on the City Attorney's Office website, as a part of his
28  aggressive public relations campaign against Monster.

1    Case No. EDCV13-00786 VAP (OPx) (C.D. Cal. Apr. 29, 2013) (hereafter "*Monster v.*

2    *Herrera*").  Monster contends that Mr. Herrera's demands and his investigation are

3    unconstitutional, and preempted by the federal Food, Drug, and Cosmetic Act ("FDCA") and the

4    doctrine of primary jurisdiction (*i.e.*, deference to FDA).

5              **2.      Plaintiff Filed *Herrera v. Monster* in California State Court.**

6              Plaintiff filed the instant action against Monster on May 6, 2013, in San Francisco

7    Superior Court.  *People of the State of California ex rel. Dennis Herrera v. Monster Beverage*

8    *Corporation*, Case No. CGC-13-531161.[4]  It is a mirror image of *Monster v. Herrera*.  The

9    gravamen of Plaintiff's Complaint is that Monster Energy® drinks contain unsafe levels of

10   caffeine as measured by *federal* requirements for "generally recognized as safe" (GRAS)

11   pursuant to FDA regulations.  Food safety in this regard is, necessarily, a federal question, as

12   there is no such thing as a California version of "GRAS."  Yet, Plaintiff has artfully pled a single

13   disjunctive claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et*

14   *seq.*, hoping to clothe in state-law garb what is, necessarily, an issue of federal law.  (Dkt. No. 1,

15   Ex. A at ¶ 62.)  On June 3, 2013, Monster removed this action.  (Dkt. No. 1.)

16             **3.      Similarities Between the Two Complaints.**

17             The gravamen of both complaints is identical, and hinges on whether Monster's energy

18   drinks are safe under FDA regulations concerning GRAS.  Both involve the same facts, the same

19   parties, and the same legal issues.  Indeed, the complaints raise the identical disputed issues:

20   whether Monster (1) misbranded its energy drinks as dietary supplements; (2) sells unsafe

21   products; (3) sells misbranded products because the labeling is misleading and warnings are

22   inadequate; (4) markets its energy drinks to children and adolescents and falsely suggests that the

23   drinks are safe for consumption by youth; (5) markets its energy drinks to minors using alcohol

24   and drug references; and (6) markets its products with unsubstantiated claims about the purported

25   benefits of their ingredients.  (*Compare Herrera* Compl. (Dkt. No. 1, Ex. A at ¶ 62 (a)–(f)), *with*

26   *Monster* Compl. (RJN, Ex. 1 at ¶¶ 18, 22-23, 27-28, 41-42).)

27

28   [4] The *Herrera* Complaint is attached as Ex. A to Monster's Notice of Removal.  (Dkt. No. 1,
     Ex. A.)

1    The only difference lies in the causes of action pled, but this only serves to highlight their

2    similarity.  Because Plaintiff's suit is simply the converse of *Monster v. Herrera*, a party's claims

3    of misconduct in one action will provide legal defenses in the other.  For example, Monster

4    alleges that Plaintiff's demands are preempted by the FDCA and the doctrine of primary

5    jurisdiction, and unconstitutional under the First and Fourteenth Amendments, as well as the

6    Commerce Clause.  (RJN, Ex. 1 at ¶¶ 72-93.)  These same claims are Monster's defenses to

7    Plaintiff's UCL claim in this action.

8            **C.      FDA's Investigation into the Safety of Energy Drinks.**

9            FDA has publicly announced that it is conducting an evidence-based evaluation of the

10   safety of caffeine-containing energy drinks, including for subpopulations such as adolescents and

11   consumers sensitive to caffeine.  (RJN, Ex. 2 at 1-2.)

12           The agency will take several steps as part of this investigation, including (1) collecting

13   and reviewing scientific literature on the safety of caffeine; (2) commissioning an independent

14   study on caffeine intake; (3) contracting with the Institute of Medicine (IOM) of the National

15   Academies to hold a public meeting to discuss the hazards associated with consuming caffeine;

16   (4) evaluating whether products that may be safe for most individuals under labeled-use

17   conditions may pose significant risks, when consumed in excess or by vulnerable groups;

18   (5) investigating adverse events that reporting parties have associated with energy drinks;

19   (6) meeting with companies to hear their rationale for adding caffeine to varied products and

20   meeting with the American Beverage Association and the Grocery Manufacturers Association;

21   (7) finalizing guidance to clarify for industry the line between dietary supplements and

22   conventional foods and beverages; and (8) continuing surveillance of ingredients such as taurine

23   and guarana, to determine whether enforcement or other regulatory action is needed to protect the

24   public health.  (RJN, Ex. 2 at 1-2, Ex. 1 (Ex. B at 1-3).)[5]

25           Based on the outcome of the investigation, FDA has stated that it will consider taking

26   appropriate action with respect to the "labeling of these products, such as requiring disclosure of

27   _____

28   [5] *See also* Notice of Removal, Dkt. No. 1, Ex. F.

MOTION TO DISMISS, STAY, OR TRANSFER ACTION
CASE NO. CV13-2500- PJH                                                                    4
sf-3293790

1 | the amount of caffeine in food products, limitations on intended use, or warnings about possible
2 | adverse effects."  (RJN, Ex. 1 (Ex. B at 6).)

3 |          Since the FDA announcement, the Institute of Medicine has scheduled a Workshop on
4 | Potential Health Hazards Associated with Consumption of Caffeine in Food and Dietary
5 | Supplements.  That workshop will commence on August 5, 2013.  (RJN, Ex. 5.)

6 | **III.     ARGUMENT**

7 |          **A.     The Court Should Dismiss or Stay this Case Under the First-to-File Rule.**

8 |          Federal comity permits a district court to decline jurisdiction over an action where a
9 | complaint involving the same parties and issues has already been filed in another district.  *See*
10 | *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *Inherent.com v.*
11 | *Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006).  This is known as the first-to-
12 | file rule.  *Pacesetter*, 678 F.2d at 95.

13 |          Where there is duplicative litigation, the court in the second action will normally dismiss
14 | or stay in favor of the first-filed action.  *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622,
15 | 625 (9th Cir. 1991) (quoting *Pacesetter*, 678 F.2d at 95).  The rule "is designed to avoid placing
16 | an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting
17 | judgments."  *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir.
18 | 1979).  Because the rule "normally serves the purpose of promoting efficiency well," it should not
19 | be "disregarded lightly."  *Id.*[6]

20 |          The first-to-file rule applies equally to government enforcement lawsuits such as this.  *See*
21 | *In re TFT-LCD (Flat Panel) Antitrust Litig.,* Nos. C 10-3517 SI, 10-3619 SI, 2011 U.S. Dist.
22 | LEXIS 53064 (N.D. Cal. Apr. 13, 2011) (court applied first-to-file rule to give priority to first-

23 |

---

[6] Other courts agree that the interests of justice are served by dismissing duplicative litigation at
the earliest opportunity.  *See Curtis v. DiMaio*, 46 F. Supp. 2d 206, 215-16 (E.D.N.Y. 1999)
(dismissing duplicative action where the "evidence necessary to prove the [first-filed] action [] is
the same evidence that would prove this action"); *Howard v. Klynveld Peat Marwick Goerdeler*,
977 F. Supp. 654, 664-65 (S.D.N.Y. 1997) (dismissing duplicative action under Rule 12(b)(6));
*Young v. Kelly*, Nos. 88-CV-0511E(M), 88-CV-0769E(M), 1993 U.S. Dist. LEXIS 13816, at *2
(W.D.N.Y. Sept. 30, 1993), (dismissing action subsumed within earlier-filed class action; "federal
courts retain inherent discretion . . . to stay or dismiss a suit even by non-class members" in order
to avoid inconsistent rulings), *aff'd without op.*, 33 F.3d 49 (2d Cir. 1994).

1   filed class action over later-filed State Attorney General *parens patriae* suits); *see also Gate*

2   *Guard Servs. L.P. v. Solis*, No. V-10-91, 2011 U.S. Dist. LEXIS 75508, at *6 (S.D. Tex. July 12,

3   2011) (court applied first-to-file rule to give priority to first-filed declaratory judgment brought by

4   an employer against the federal Department of Labor for a declaration that it was in compliance

5   with the Fair Labor Standards Act).

6        As set forth below, the first-to-file rule supports dismissal or stay of this action.

7            **1.      This Case Satisfies the Requirements of the First-to-File Rule.**

8        Courts consider three factors in determining whether to dismiss or stay under the first-to-

9   file rule:  "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the

10  similarity of the issues."  *Alioto v. Hoiles*, No. C 04–1395 PJH, 2004 U.S. Dist. LEXIS 21398, at

11  *13-14 (N.D. Cal. Oct. 12, 2004).  "Exact parallelism between the two actions need not exist; it is

12  enough if the parties and issues in the two actions are 'substantially similar.'"  *Id.*, at *14 (citing

13  *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)); *see also L. Cohen Grp. v. Herman*

14  *Miller, Inc.*, No. C 05-4476 SI, 2006 U.S. Dist. LEXIS 2301, at *9 (N.D. Cal. Jan. 19, 2006)

15  ("The fact that [Defendant]'s complaint contains additional causes of action does not detract from

16  the fact that substantially all of the allegations in [Plaintiff]'s complaint stem directly from

17  [Defendant]'s complaint."); *Nat'l Union Fire Ins. Co. v. Payless Shoesource, Inc.*, No. C-11-1892

18  EMC, 2012 U.S. Dist. LEXIS 112346, at *13 (N.D. Cal. Aug. 9, 2012) (finding similarity where

19  the "central question" in each suit was the same); *Intersearch Worldwide, Ltd. v. Intersearch*

20  *Grp., Inc.*, 544 F. Supp. 2d 949, 959 (N.D. Cal. 2008) (same).  All three requirements of the first-

21  to-file rule are met here.

22       First, the chronology of the actions supports dismissal or stay of this action.  *Monster v.*

23  *Herrera* was filed on April 29, 2013.  (RJN, Ex. 1.)  Herrera responded by filing this action on

24  May 6, 2013.  (Dkt. No. 1, Ex. A.)  There is no question that this case is the second-filed action.

25  *See Alltrade*, 946 F.2d at 625 (first-to-file rule determined by date complaints filed).  The facts

26  here are similar to *Gate Guard Services*, in which a plaintiff-employer that was under

27  investigation by the Department of Labor ("DOL") filed suit first, for a declaration that it was in

28  compliance with the FLSA; that suit was accorded priority over the later-filed DOL lawsuit.

1  2011 U.S. Dist. LEXIS 75508, at *6.

2       <u>Second</u>, the complaints involve the same parties, although *Monster v. Herrera* is brought

3  on behalf of Monster and its wholly owned subsidiary Monster Energy Company.

4       <u>Third</u>, the complaints involve identical issues.  As discussed above, the central issue in

5  both cases is whether Monster's energy drinks are safe under FDA's regulations.  (*See* Section

6  II.B.3, *supra*.)

7       **2.**      **None of the Exceptions to the First-to-File Rule Apply.**

8       Relief under the first-to-file rule rests in the court's discretion and may be refused "[i]f a

9  party has acted in bad faith, if the first-filed suit is plainly anticipatory, or if a party has engaged

10  in transparent forum shopping . . . ."  *Alibaba.com, Inc. v. Litecubes, Inc.*, No. C03–5574 MHP,

11  2004 U.S. Dist. LEXIS 3492, at *5 n.3 (N.D. Cal. Mar. 8, 2004) (citing *Ward v. Follett Corp.*,

12  158 F.R.D. 645 (N.D. Cal. 1994)); *see also Alltrade, Inc.*, 946 F.2d at 628.  None of these

13  exceptions apply here.

14       Plaintiff will argue that Monster's suit is anticipatory because it was filed after he sent a

15  letter threatening to take action.  To fall within the exception of anticipatory suits, however, there

16  must be "specific, concrete indications that a suit by the defendant was imminent."  *Ward*, 158

17  F.R.D. at 648.  Monster did not know when Mr. Herrera would file suit.  *See Gate Guard Servs.*,

18  2011 U.S. Dist. LEXIS 75508, at *35 ("[a]t the time Gate Guard filed its Declaratory Judgment

19  Action, it had no way of knowing whether it would take months or years for the DOL to decide to

20  file an enforcement action").  Indeed, it seems Mr. Herrera himself did not know exactly when he

21  would file suit.  In the motion filed before Judge Phillips, he repeatedly claims that his letters

22  "simply informed Monster of the City Attorney's position."  (*Monster v. Herrera*, Dkt. No. 18 at

23  p. 6.)

24       Moreover, "[m]erely filing a declaratory judgment action in a federal court with

25  jurisdiction to hear it, in anticipation of … litigation, is not in itself improper anticipatory

26  litigation or otherwise abusive 'forum shopping.'"  *Sherwin-Williams Co. v. Holmes Cnty.*, 343

27  F.3d 383, 391 (5th Cir. 2003); *see also Alltrade*, 946 F.2d at 628 (declining to exercise the

28  anticipatory suit exception, even where it was eminently clear that a party would file suit, where

1   equity did not warrant departing from the first-to-file rule); *Tesoro Corp  v. Chartis Specialty Ins.*

2   *Co*., No. C 11-5718 PJH, 2012 U.S. Dist. LEXIS 28078, at *5-6 (N.D. Cal. Mar. 2, 2012) (the

3   fact that one party filed suit after the parties' negotiations reached an impasse "standing alone, is

4   [not] sufficient to support the conclusion that the [first-filed] action was filed in bad faith").[7]

5         Plaintiff may also argue that Monster misrepresented its intention to settle in an effort to

6   win the "race to the courthouse."  This is not accurate.  In fact, the chronology is quite different.

7   It was not until after Plaintiff sent his "take-it-or-leave-it" letter that Monster decided to file suit.

8   (*See* Section II.A, *supra*.)  Leading up to the receipt of that letter, Monster had made numerous

9   preparations for the scheduled May 2 meeting.  Even after filing suit, Monster still offered to

10   attend the May 2 meeting and reiterated its willingness to negotiate.  Mr. Herrera, however,

11   unilaterally cancelled the meeting.  He concluded that the meeting would no longer be productive,

12   despite Monster's assurance that it believed the parties could find common ground.  (RJN, Ex. 4.)

13         Monster acted in good faith and sought a declaration of its rights so that it may conduct its

14   business.  Monster did not engage in abusive forum shopping, either.  The Central District is in

15   fact the most convenient forum for the parties and witnesses because Monster's corporate

16   headquarters are located in Corona, California and the conduct that Plaintiff challenges arose in

17   that district.  (*See* Declaration of Thomas J. Kelly ("Kelly Decl.") ¶¶ 2-3.)

18         For these reasons, departure from the first-to-file rule is not warranted here.

19         **3.     If the Court Does Not Dismiss this Action, It Should Stay The Case
                      Pending Resolution of *Monster v. Herrera*.**

20

21         If the Court decides not to dismiss this action under the first-to-file rule, it should stay the

22   case pending resolution of *Monster v. Herrera*.  A district court has the inherent power to control

23   _____

24   [7] The absence of any specific, concrete indication that Plaintiff's lawsuit was imminent does not
     negate the fact that Monster suffered injury-in-fact during Mr. Herrera's investigation.
25   (*Monster v. Herrera*, Dkt. No. 18 at p. 5.)  A party's anticipation that its adversary will "make
     good on its threat to file an enforcement action at some point in the future" is sufficient for the
     purposes of Article III standing, but insufficient for proving an anticipatory filing.  *Gate Guard*
26   *Servs.*, 2011 U.S. Dist. LEXIS 75508, at *33-34; *see also M.D. Beauty, Inc. v. Gross,* No. C03-
     3082 SBA, 2003 U.S. Dist. LEXIS 27257, at *9-10 (N.D. Cal. Oct. 27, 2003) ("A party's
27   reasonable apprehension of legal controversy … [satisfies] the requirement of a justiciable
     controversy without rising to the level of a direct threat of imminent litigation") (citations
28   omitted).

1    and manage its docket, including by staying proceedings before it.  *Landis v. N. Am. Co.*,

2    299 U.S. 248, 254-55 (1936).  When determining whether to grant a stay, the district court should

3    consider "the possible damage which may result from the granting of a stay, the hardship or

4    inequity which a party may suffer in being required to go forward, and the orderly course of

5    justice measured in terms of the simplifying or complicating of issues, proof, and questions of law

6    which could be expected to result from a stay."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.

7    1962) (citations omitted).  These factors clearly favor staying these proceedings.

8            First, a stay of this action will promote judicial efficiency by preventing the Court and the

9    parties from unnecessarily expending limited resources.  Resolution of *Monster v. Herrera* will

10   likely resolve the legal and factual issues raised by this action.  There is no need for two federal

11   courts to tackle these issues simultaneously.  Indeed, Plaintiff filed a motion to dismiss *Monster v.*

12   *Herrera* on June 3, 2013, and a hearing is set for August 19, 2013.  (*Monster v. Herrera*, Dkt.

13   No. 17.)[8]  Permitting this case to go forward would impede the orderly course of justice.

14           Second, if this action proceeds without a stay, there will be a substantial burden on

15   Monster because it will be forced to incur costs to litigate the same issue in multiple jurisdictions.

16   *See Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 964 (S.D. Cal. 1996) (granting stay after

17   considering the "massive costs" that proceeding with litigation would entail for the parties and the

18   court).  It would be inefficient to invest time and resources in this action before the resolution of

19   *Monster v. Herrera*.

20           Third, a stay will not prejudice Plaintiff.  No substantive proceedings have taken place in

21   this lawsuit, and Plaintiff will be able to pursue his claims as counterclaims in *Monster v.*

22   *Herrera*.

23           Accordingly, this Court should exercise its discretion to stay this action pending the

24   resolution of *Monster v. Herrera*.

25

26

27   _____

28   [8] Plaintiff concedes that the two actions involve the same parties and duplicative issues, including
     the safety of Monster's energy drinks.  (*Monster v. Herrera*, Dkt. No. 18 at p. 13.)

1

**B.      If the Court is Not Inclined to Dismiss or Stay this Case, the Case Should Be Transferred to the Central District of California.**

2

3      If the Court is not inclined to grant Defendant's motion to dismiss or issue a stay, this case

4   should be transferred to the Central District of California.  Transfer is warranted by the first-to-

5   file rule, 28 U.S.C. § 1404(a), and Civil L.R. 3-2(h).

6              **1.      The First-To-File Rule Supports Transfer to the Central District of California.**

7

8      Where another pending action involves substantially similar legal and factual issues, the

9   first-to-file rule supports transfer without reaching other factors traditionally considered under 28

10   U.S.C. § 1404(a).  *See St. Helena Wine Co. v Allied Mgmt.*, No. C98-1683 MJJ, 1998 U.S. Dist.

11   LEXIS 12558, at *3 n.2 (N.D. Cal. Aug. 10, 1998) (transferring action under comity doctrine

12   without reaching section 1404(a) factors).

13      Permitting this later-filed case to proceed in parallel with *Monster v. Herrera* poses

14   precisely the risks the first-to-file rule is intended to prevent:  duplicative litigation, waste of

15   judicial resources, and inconsistent rulings.  If transferred, this action will be related to *Monster v.*

16   *Herrera*, and Judge Phillips will be able to manage the actions and avoid duplicative litigation

17   and inconsistent rulings.  *See* Fed. R. Civ. P. 42.

18      For these reasons, and those stated in Section II.A, *supra*, the first-to-file rule strongly

19   favors transfer to the Central District.

20              **2.      Transfer to the Central District of California Is Proper Under Section 1404(a) to Promote Judicial Economy.**

21

22      Under section 1404(a), a case may be transferred to any other district court where the

23   action "might have been brought," if the transfer would serve the "convenience of the parties and

24   witnesses" and promote "the interest of justice."  28 U.S.C. § 1404(a).  The Central District of

25   California is a district in which this action "might have been brought" because it has personal

26   jurisdiction over the parties, subject matter jurisdiction over these proceedings, and venue would

27

28

have been proper.[9]

Of the various factors courts consider when a party requests transfer "in the interests of justice" under § 1404(a), the promotion of judicial economy is key. *See Cont'l Grain Co. v. The Barge FBL—585*, 364 U.S. 19, 26 (1960) ("[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent"). As such, pendency of similar litigation is sufficient, *by itself*, to compel a transfer. *See Elecs. For Imaging, Inc. v. Tesseron, Ltd.*, No. C 07-05534 CRB, 2008 U.S. Dist. LEXIS 10844, at *3 (N.D. Cal. Jan. 29, 2008) ("Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.") (citation omitted).

Indeed, a third action presenting similar issues, *Fisher, et al. v. Monster Beverage Corporation, et al.*, No. 5:12-cv-02188-VAP-OP, is also pending in the Central District and has been actively litigated. Monster's motion to dismiss that action is fully briefed and now under submission, following a hearing on the motion before Judge Phillips that took place on June 21, 2013. Transferring this action to a forum where two prior filed actions presenting similar issues are pending will promote judicial economy.

Thus, the interests of justice support transfer in this case.

### 3. The Remaining Section 1404(a) Factors Also Favor Transfer to the Central District of California.

Transfer would also serve the convenience of the parties and witnesses. In evaluating convenience, courts consider the following factors: (1) the respective parties' contacts with the forum and the relationship of claims to the forum; (2) ease of access to sources of proof;

---

[9] The Central District of California would have had personal jurisdiction and subject matter jurisdiction over these proceedings. (*See* Notice of Removal, Dkt. No. 1.) Moreover, this action "might have been brought" in the Central District because Plaintiff had the right to raise the subject matter of this action as a counterclaim in *Monster v. Herrera*. *See A.J. Indus., Inc. v. U.S. District Court*, 503 F.2d 384, 386-89 (9th Cir. 1974) ("the ability to raise the subject matter of a suit in the transferor district by counterclaim in the transferee district will, as a general proposition, satisfy the 'where it might have been brought' requirement of 28 U.S.C. § 1404(a)").

(3) differences in costs of litigation in the two forums; (4) the convenience of the parties and witnesses; and (5) the plaintiff's choice of forum.  *See Billing v. CSA-Credit Solutions of Am., Inc.*, No. 10-cv-0108 BEN (NLS), 2010 U.S. Dist. LEXIS 63314, at *13 (S.D. Cal. June 21, 2010) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 489-99 (9th Cir. 2000)).

The claims in this case involve allegations of statewide conduct; as such there is no special relationship of the claims to this District.  No material records or documents in this case were created, received, or are currently maintained by Monster in the Northern District of California.  (Kelly Decl. ¶ 3.)

Moreover, differences in ease of access to sources of proof and convenience of the witnesses support transfer to the Central District.  Both Monster Energy Company and Monster Beverage Corporation have their principal place of business in Corona, California, where their corporate offices, main warehouse, and distribution center are located, and where core executive and administrative functions are primarily carried out.  (Kelly Decl. ¶ 2.)  More than 95% of Monster's employees in California work in Southern California, with more than 75% of them working in Corona.  (*Id*. at ¶ 4.)  Monster employees who have knowledge of product formulation, marketing, and sales for Monster Energy® products work at Monster's headquarters in Corona.  (*Id*.)  In addition, Monster formulates its products in Southern California, and maintains relevant documentation for its products in Corona.  (*Id*. at ¶ 3.)  Monster also directs all marketing, including marketing via the internet and social media, from Corona.  (*Id*.)  Furthermore, the majority of California sales of Monster Energy® products occur in Southern California.  (*Id*. at ¶ 5.)  For example, for the six month period ended June 30, 2013, revenues from sale of Monster Energy® products in Southern California were more than four times the revenues from sales in Northern California.  (*Id*.)  The Central District is clearly the most convenient and appropriate forum for litigating this action.

Finally, litigating this action in the Central District would avoid the unnecessary burden and expense of requiring parties and witnesses to travel to two different forums.  *See Papaleo v. Cingular Wireless Corp.*, No. C-07-1234-MMC, 2007 U.S. Dist. LEXIS 34448, at *4 (N.D. Cal. Apr. 26, 2007) ("[T]he pendency of an action in another district is important because of the

1   positive effects it might have in possible consolidation of discovery and convenience to witnesses

2   and parties") (citation omitted); *see also Billing*, 2010 U.S. Dist. LEXIS 63314, at *14-15

3   (transfer to forum in which related case was pending would ease access to proof because of

4   likelihood of overlapping discovery).

5          As such, the "convenience of the parties" weighs heavily in favor of transfer.

6   **IV.    CONCLUSION**

7          For each of the foregoing reasons, Defendant respectfully requests that the Court grant

8   Defendant's motion to dismiss or stay this action under the first-to-file rule.  If the Court is not

9   inclined to dismiss or stay this action, Defendant requests that the case be transferred to the

10  Central District of California.

11

12  Dated: July 3, 2013                          MORRISON & FOERSTER LLP

13

14                                       By:  /s/ *Dan Marmalefsky*
                                             DAN MARMALEFSKY
15

16                                           Attorneys for Defendant
                                             MONSTER BEVERAGE CORPORATION